306

Court of Customs and Patent Appeals.
June 12, 1934.

Edmund G. Borden, of New York City (J. Austin Stone, of Washington, D. C., of counsel), for appellant.

Charles M. Thomas and James P. Burns, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference proceeding was instituted in the United States Patent Office between the application of Cecil E. Beatie, No. 400,-531, filed July 31, 1920, and the patent of the appellee, Robert T. Pollock, 1,783,259, issued December 2, 1930, on an application filed November 14, 1929. The subject-matter of the interference was expressed in two counts, which are as follows:

"1. The process of converting heavy hydrocarbon oils into oils of lower boiling point which comprises subjecting oil to a cracking temperature and pressure in a pressure zone, separating the high boiling fraction of the evolved vapors from the low boiling fractions in the form of a condensate, then subjecting the condensate while still hot to increased cracking temperature and pressure, simultaneously distilling another independent body of oil, separating the evolved vapors according to their boiling points, and co-mingling the condensate thus formed with the oil in one of the pressure zones.

"2. The process of converting heavy hydrocarbons into oils of low boiling point which comprises subjecting oil to a temperature and pressure sufficient to effect cracking thereof, separating the high boiling fractions of the evolved vapors from the low boiling fractions in the form of condensate, forcing the condensate so separated into a succeeding zone for further cracking at an increased temperature and pressure, and mixing with the condensate an additional charge of preliminarily treated oil substantially lighter than said oil initially subjected to temperature and pressure sufficient to effect cracking thereof and obtained from a source other than said evolved vapors."

The counts of the interference correspond to claims 1 and 4 of said Pollock patent. Pollock was previously in interference with an earlier issued patent to Gray, No. 1,724,-760, issued August 13, 1929. Count 1 of this interference did not originate with Pollock, but was claim 1 of the Gray patent, was copied by Pollock, and became claim 1 of the Pollock patent. Gray disclaimed said claim 1 on November 10, 1931, through his assignee, the Texas Company, and an award of priority was made to Pollock of the subject-matter of said Gray-Pollock interference. Claim 4 was originally paralleled by claim 6 of the Gray patent, but was afterward changed by amendment, in the prosecution of the Pollock application.

A motion was made by Pollock to dissolve the interference on the grounds that the application of the party Beatie fails to support the counts, and that said application is inoperative in disclosure to carry out the process defined by the counts. The Examiner of Interferences, after an exhaustive discussion of the matter, denied the motion. Pollock electing not to take testimony, priority was duly awarded to Beatie on both counts. On appeal, the Board of Appeals reversed the decision of the Examiner of Interferences, and priority was awarded to Pollock, from which decision the party Beatie has appealed.

The subject-matter of the interference consists of a process of converting heavy hydrocarbon oils into oils of lower boiling point by heat and pressure, and is, generally speaking, carried out by subjecting such oils and their distillates to treatment in a succession of cracking units.

The Beatie disclosure, which was held by the Board of Appeals to not support the counts of the interference, is shown by the drawings and specification to include three units, each comprising a cracking coil, a separating chamber, and a dephlegmator. Crude oil is forced into a pipe still where it is subjected to cracking heat and pressure. The highly heated products from the coil are led to a vapor-liquid separating chamber. Vapors are drawn from this separator into a dephlegmator, in which a reflux condensate is produced therefrom. The uncondensed low boiling point vapors from this dephlegmator are condensed in a final condenser and withdrawn. The liquid from this vapor-liquid separating chamber is withdrawn and fed into a second pipe still where it is subjected to a lower temperature and pressure. The products from this still go to another vapor-liquid separating chamber, from which the vapors go to a second dephlegmator. The liquid portion of this distillate is withdrawn, and is fed to a third coil still where lower temperature and pressure is maintained. The reflux condensate from this second still is withdrawn and is conducted back to the first still in which the highest temperature and pressure are maintained. In the third still, the remaining oil or result of the previous processes is subjected to a lower cracking temperature, and the heated products go to a third liquid-vapor separator; the liquid content thereof being withdrawn and taken out of the system. The vapor from this separator goes into a third dephlegmator, where a reflux condensate is produced, which is pumped, together with liquids from the first still, into the second still of the system. The light or gasoline content from the third dephlegmator is condensed and withdrawn from the system.

It will thus be seen that Beatie shows a system by which he takes the crude oil, subjects it to a high temperature and pressure, and in succeeding processes subjects the residue of this oil to succeeding lower temperatures and pressures. The reflux condensate is treated by withdrawing it and feeding it backward through the system so that it is successively treated with higher temperatures and pressures.

There has been much discussion in this case as to the method of operation of the Pollock process and the process of the appellant Beatie. A reference to the Beatie application leaves no doubt in the mind as to the nature of his disclosure. This disclosure is, in brief, as stated by him: "Another ob-ject of the invention is to provide a process of cracking oil in stages in which the residuum oil from one stage advances to a succeeding stage for treatment at a lower temperature and heavier condensates of vapors formed in one stage advance to a preceding stage or in a direction countercurrent to the advance of the residuum."

Again, he states: "Another object of the invention is to provide a process of cracking oil in stages by which the carbon which is formed in each of the stages is continuously and progressively carried forward through the stages to the point of discharge by a stream of fresh incoming oil advancing successively through the stages. * * *

"All of the free carbon formed in the cracking operation is carried forward continuously with the main body of the oil and is discharged with the residuum from the separator of the third stage converter, which converter is maintained at the lowest temperature. * * *

"Any oil which has not been vaporized in any of the various stages never goes through the same cracking or heating elements twice and therefore the length of the time in which any particular portion of the oil remains under treatment may be accurately controlled to prevent the oil from reaching the 'fatigue' stage or a point where it will be broken down with an excess formation of carbon."

In attempting to read the counts of the interference upon Beatie's disclosure, counsel have treated the third still as the initial step in the process, and by means of which it is said the counts will read upon the disclosed process. This was the method also adopted by the Examiner of Interferences. It is also argued by counsel for appellant that if the intermediate still of the system be used as the initiation of the process, the counts will then read upon the disclosure. However, it is quite apparent from the drawings and disclosure and flow map of the applicant Beatie, that he has not disclosed any such method of operation. The method he has declared and plainly shown is a progressive one, starting with heavy hydrocarbon oils as is specified in the count, and proceeding through the succeeding stages of his cracking and separating processes. It can hardly be said that, contrary to his method as outlined in his specification, he may now adopt a different method and so change the same that it might, when so changed, read upon the counts of the interference.

It is argued by counsel that this method was the method adopted by Pollock, and that

308

inasmuch as these counts have been held patentable to Pollock, therefore, in a broad construction of the counts, these counts should be likewise read upon the disclosure of Pollock. Pollock shows a succession of cracking units through which the crude oil is taken step by step. Pollock's theory and disclosure was to subject not only the residuum, but his reflux condensate to processes in successively higher temperatures and pressures.

Rule 109 of the United States Patent Office gave the party Beatie the right, in this interference, to make a motion to dissolve if he was of the opinion that the party Pollock had not disclosed the subject-matter of the counts of the interference. This he did not do. While there is doubt in the minds of the court as to the disclosure of Pollock being sufficient for the purposes of this interference, that matter has not been raised by the party Beatie, and this court may not now pass upon the same. While it may produce unfortunate results, our only function is to pass upon the correctness of the decision of the Board of Appeals in which it held that the Beatie application did not support the counts of this interference. The question of the validity of the claims of the Pollock patent, from which the counts of this interference are taken, is a matter not here involved.

This brings us to a consideration of the counts in issue. Parenthetically, it may be noted that count 1 came primarily from the disclosure of the Gray patent. In that patent there was a clear disclosure of an independent body of oil in a still 44, which was a part of the system. This was Gray's preferred process. However, in his application, he showed an alternative process which did not contain the independent body of oil and still. It was upon this alternative process that the party Pollock was able to make the claim which is now count 1 of this interference. From that time to this, the confusion which has arisen has arisen largely from the preferred, and not from the alternative, disclosure of Gray, which preferred disclosure has never been shown by either Pollock or Beatie, so far as this record shows.

It will be observed that count 1 of this interference recites, among other things, "simultaneously distilling another independent body of oil." This, as has been said, descended from the preferred Gray disclosure, and is not present in the Beatie application. There is no independent body of oil in the system. All are dependent upon each other, and, after the first treatment in the first still, succeeding processes are concerned with the products of the first distillation and not with "heavy hydrocarbon oils," which, as we view the matter, must refer to the crude oils which are the material used in the initiation of the process.

The Board of Appeals recognized that in this respect the party Pollock made no better showing than did the applicant Beatie. This, however, is not now before us for consideration, and is not to be taken as a reason why this applicant may make a count which his disclosure will not support.

The language of the second count, which was thought by the Board of Appeals to not read upon the disclosure of Beatie, was the following: * * * And mixing with the condensate an additional charge of preliminarily treated oil substantially lighter than said oil initially subjected to temperature and pressure sufficient to effect cracking thereof and obtained from a source other than said evolved vapors.

It was thought by the Board of Appeals that the Beatie application did not show that the condensate was mixed with preliminarily treated oil substantially lighter than oil. In arriving at this conclusion the Board said: "In passing on this count the Examiner of Interferences discusses the disclosed operation of Beatie's apparatus in which residual oil from pressure zone 22 is mixed in surge tank 56 with the condensate from tower 114. The condensate from tower 114 satisfies the requirements of the count as to the low boiling condensate first referred to. The residual oil from pressure zone 22 is a preliminarily treated oil obtained from a source other than said evolved vapors but in our opinion it is not a substantially lighter oil than the stock treated in pipe still 102 as this oil is made up, not only of residuum from the second cracking coil, but also of condensate from tower 34. The probabilities are that the stock thus formed would be as light or lighter than the mixture in surge tank 56. The examiner also states that condensate from tower 74 may be sent to this surge tank 56 and also that the oil passing to still 104 may be a mixture of residual oil from still 64 and the heavy condensate from tower 34 or that it may alternatively be only residual oil from still 64. This is within the possibility of the apparatus disclosure but the Beatie specification as originally filed describes no such operation of his apparatus. Beatie does provide alternative paths for his reflux condensate but he discloses nothing of how these alternative paths are to be utilized in any working process. They could doubtless be·

used in various ways, one or more of which would satisfy the requirements of count 2. However we believe it well settled that an apparatus which is merely capable of carrying out a process constitutes no satisfactory disclosure of a process itself such as would warrant the rejection of claims or the making thereof."

We find ourselves in agreement with this statement. Counsel for Beatie argues that by treating his third still as the first process in the series, or by using his second still as his first process, the process will give the results called for in the count. However, as we have seen, there is no justification for considering the process in this light. The whole disclosure of Beatie should be considered in the light in which it was made, and, when so considered, it calls for an orderly process of successive steps, which is not at all met by a selection of units by which the action is reversed or greatly modified.

We are of opinion that the counts of the interference do not read on the Beatie disclosure, and the decision of the Board of Appeals is therefore affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.